83   233
98   721

CASE 34—PETITION ORDINARY—OCTOBER 1.

# Holsen v. Rockhouse, &c.

APPEAL FROM KENTON CIRCUIT COURT.

CONSTRUCTION OF DEVISE.— A testator devised his entire estate to his widow, providing that "after my death you can divide all I left between our children according to your judgment, and which is the best toward you and keeps the best the Catholic religion." The widow had one child by a former husband and two children by the testator.

Held— That the widow took only a life estate, with the power to divide the property between her children by the testator as she saw proper; but she had no power to devise any part of the estate to her child by her former husband.

J. F. & C. H. FISK FOR APPELLANT.

1. By the expression "our children" the testator meant the children of his wife by him, and did not mean to include her child by her former husband.

2. The widow, under the devise to her, took only a life estate, with the power to divide the property between the testator's two children in any proportion she might see proper. (Collins, &c., v. Carlisle's Heirs, 7 B. Mon., 14; McGaughey's Adm'r v. Henry, &c., 15 B. Mon., 399; Carroll's Heirs v. Carroll's Heirs, 12 B. Mon., 639; Moore v. Webb, 2 B. Mon., 283; Lasley for &c. v. Blakeman, 4 B. Mon., 539–40; Smith v. Bell, 6 Pet. (U. S.), 74; Thompson v. Vance, 1 Met., 667; Green v. Johnson, 4 Bush, 167; Major, &c., v. Herndon, &c., 78 Ky., 128; Hill on Trustees, 71; Perry on Trusts, sections 112, 250, 251, 254, 256; Roper on Legacies, vol. 2, sections 1418–1425; Griffiths v. Evans, 5 Beav., 241; 1 Story's Eq. Juris., section 169; 2 Story's Eq. Juris., sections 1068, 1068a, 1070 and note, 1071, 1072 and note; 2 Redfield on Law of Wills, 411 (6), 412–416; Ibid., 316, and notes.)

R. D. HANDY FOR APPELLEES.

Brief not in record.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Gerhard Holsen, in the year 1839, intermarried with a widow named Dorotha Rockhouse, her maiden name being Niethfeldt. The widow at the time of her sec-

·ond marriage had one child called Clemens Rockhouse. Holsen had by his wife Dorotha three children; one died in infancy, and the other two, Gerhard and John, survived the father.

One of his sons, Gerhard, left Covington, where they all resided, about the year 1851, and has not been heard from for· many years. Holsen, the husband and father, was the owner in fee of the real ·estate in controversy at the time of his death.

John Holsen claiming to be the only heir, or rather the sole devisee of his father, by reason of the death ·of his brother, the latter having been gone since 1851, .and not heard from, conveyed the property in 1872 to Julia Moog, and she, by a conveyance of the same date, passed the title back to John and his wife Kate, or to the survivor. John died, and Kate Holsen, his wife, claims to own the property.

At the time of Gerhard Holsen's death he left a last will, by which he made the following devise:

"I, Gerhard Holsen, will or bequeath all what I possess in property and monies, houses and lots to my wife Dorotha Niethfeldt, called wife of Holsen. I bequeath this in good health and sound mind, with the condition that if it is possible after my death ·six holy masses shall be read for the following intentions, &c.    *    *    *    *    *    *    *    *

"After my death you can divide all I left between ·our children according to your judgment, and which is the best towards you and keeps the best the Cath-·olic religion."

The widow made no disposition of this property ·during her life, but at her death left a last will, by

which she divided all of her estate, including the lots in controversy, to her three sons—the son by her first husband and the two sons by Holsen, with the provision that if one died without heirs it should go to the other, or if John should die without children his estate should go to the children of her son Clemens, who was born of her first marriage. John died without children, leaving his wife Kate in possession under the conveyance already recited, and the children of Clemens Rockhouse (the son of the first husband) instituted the present action in ejectment against Kate, the widow of John, for the recovery of the property.

Kate, the widow of John Holsen, claims that her husband, the widow (his mother) having made no disposition of the estate during her life, took under the will of his father, and that the conveyance to Moog and the reconveyance by Moog to herself and husband passed to her the fee, she being the survivor. The right of the widow to dispose of this estate depends upon the nature of her title acquired by the will of her husband.

If she was vested with the absolute fee the action can be maintained by her devisees; if she had a life estate, or had vested in her the power to distribute or divide the estate between the two children, John and Gerhard, by her last husband, Holsen, then she had no power to devise it to strangers, or so limit the estate as to control the manner in which the title should pass in the event their two sons died without children.

The testator, in providing for his children, has

invested his wife with the discretionary power as to the share each one is to take of his estate. The one most dutiful and obedient she may give more than the other, and in the exercise of this power she is left uncontrolled by the testator.

The testator evidently intended that his children should derive some benefit from his estate, and invested their mother with such a title as would enable her to exercise a discretionary power in dividing the estate between them. She, in fact, had only a life estate, with the power to divide it between the children as she saw proper.

The will is inaptly drawn, and the language used may not express the real meaning and intention of the testator, but we must construe the will and its provisions as we find it; and looking to the condition of the testator with reference to his family, he evidently wanted his children to have his estate, and to give to his wife the right of appropriating it to their use after his death, in such manner and proportion and at such a time as she might deem best for their interest. It was a devise by the testator to his wife of his estate, to be divided between our children at her discretion.

Nor did the testator mean or intend, by the use of the words *our children*, to include the child of his wife by her first marriage. They had two children living, born of the last marriage, and it would be a strained construction to say that the father, when disposing of his estate, regarded the child by Rockhouse as much entitled to his bounty as his own children.

The testator was directing his wife as to the manner she should dispose of the property between the children — *our children* — the children begotten by me, the testator. It was neither natural nor reasonable for the testator to give to the child of Rockhouse an equal portion of his estate with his own children; and in the absence of more direct and definite language than is found in this devise, the testator's bounty must be confined to his own children, the children of himself and Dorotha *Niethfeldt*, the testator, in the devise to the wife, using her maiden name.

In the case of Collins v. Carlisle's Heirs, 7 B. M., 14, the testator made this devise: "As to my property and wealth, I first wish all my debts and funeral expenses paid, and the balance of my estate, wholly, I leave to my beloved wife, Nancy Carlisle, and to be disposed of by her and divided among my children at her discretion." The question made in that case was as to the character of estate vested in the wife, and it was held that she held only a life estate.

In analyzing the devise in question, there is but little if any difference between its provisions and that of the will of Carlisle, the object in each will being to vest the wife or the widow with a discretionary power in disposing of the estate between the devisee's children.

In the case of McGaughey's Adm'r v. Henry, 15 B. M., 383, the land in controversy was set apart by the testator "for the exclusive benefit of my wife, to be disposed of in any way she may think

proper as life interest, *and at her death or before* to give said land to any one or more of her said children as she may believe them most worthy or needy." It was argued in that case that a fee-simple was intended with a restricted power of disposition; but the court held that the widow had only a life estate, and that one object in conferring upon her such a power of disposition was to enable her to secure the respectful and affectionate attention of the children.

In the case of Moore v. Webb, 2 B. M., 282, the estate was devised to the widow "to dispose of as she might think best whilst she survived him, and that whatever disposition she might make of it at her death should be duly and strictly attended to and stand good in law." This was held to pass the absolute fee, and in it we find a marked difference from the cases cited in which it was held that the widow had a limited or restricted interest. The power to dispose of the estate whilst the widow survived was not only expressly conferred in the last-named case, but the power of disposition at her death without condition was expressly given.

Under the will of the testator, the power to deprive his own children of any part of his estate, or to limit it for life with remainder to those who were strangers in blood, was never vested in his wife, and the undertaking to dispose of the property by her will to the children of Clemens Rockhouse was in violation of the trust reposed in her by the will of her husband and passed no title. The wife having the power to give to the two children the estate in such manner and at such time as in her judgment she thought

proper, must be held to have had an estate for life only, and at her death being undisposed of, the estate passed to the testator's two sons.

The judgment is reversed, and a new trial awarded for proceedings consistent with this opinion.